A97A1089. DEPARTMENT OF TRANSPORTATION et al.
v. MIKELL et al.
(493 SE2d 219)

BLACKBURN, Judge.

The Georgia Department of Transportation (DOT) and three of its employees, Jerry Dubberly, Shell Hartley, and Shelton Anderson, appeal from a jury verdict in favor of Carolyn Mikell and Betty Burch in Mikell and Burch's suit for negligence and wrongful death. After their father was killed when his vehicle was struck by a logging truck, Mikell and Burch sued the DOT and the three named employees for negligently designing and maintaining the intersection where the collision occurred.[1] On appeal, the DOT and its employees contend that their motions for j.n.o.v. and new trial should have been granted, as there was no evidence of any negligence on behalf of any of them.

1. When reviewing a trial court's denial of a motion for j.n.o.v. or new trial, this Court determines if there is any evidence to support the jury's verdict. *Lofty v. Fuller*, 223 Ga. App. 95, 97 (2) (477 SE2d 30) (1996). "Where a jury returns a verdict and it has the approval of

---

[1] The owner of the logging truck, Griffis Timber Company, and the driver of the truck, Bobby Griffis, did not appeal the jury's verdict, which was joint and several against all the defendants, but they have joined appellees' brief seeking to uphold the verdict.

the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motions for new trial and j.n.o.v. will not be disturbed." (Punctuation omitted.) Id.

Because this is a pre-Tort Claims Act case, in order to prevail and hold the DOT liable under the doctrine of respondeat superior for negligently designing the intersection where the collision occurred, appellees had to show that the named DOT employees were negligent. See *Donaldson v. Dept. of Transp.*, 212 Ga. App. 240, 241 (441 SE2d 473) (1994); see also *Price v. Dept. of Transp.*, 257 Ga. 535, 536 (361 SE2d 146) (1987) (finding that the "DOT is a defendant and liable in tort, if at all, only because of the doctrine of respondeat superior"). Under applicable law, sovereign immunity was waived to the extent of insurance coverage as there was liability insurance maintained by the DOT on its employees.[2] Accordingly, the case is controlled by general principles of negligence, and this Court reviews the evidence adduced at trial to determine whether or not the motions for j.n.o.v. and new trial were appropriately denied under the law and the evidence. See generally *Bob v. Hardy*, 222 Ga. App. 550 (474 SE2d 658) (1996) (applying general negligence principles to a pre-Tort Claims Act case).

Viewed most favorably to upholding the verdict, the evidence shows that on August 7, 1989, appellees' father, Curtis Spivey, drove his pickup truck down county road 194 until he reached its intersection with State Highway 187. Although the evidence is in conflict regarding what Spivey did upon reaching this intersection, the composition of the intersection itself is key to the case. State Highway 187 has a posted speed of 55 mph, and vehicles traveling on that road have the right of way over vehicles traveling on county road 194 at their intersection. There are no electric traffic signals at the intersection of State Highway 187 and county road 194. However, there are a stop sign and warning pavement strips on county road 194, near such intersection.

---

[2] Due to the presence of insurance in this case, the ministerial/discretionary analysis generally used in sovereign immunity cases to analyze the acts of public officials is inapplicable. See *Logue v. Wright*, 260 Ga. 206 (1) (392 SE2d 235) (1990), rev'd on other grounds, *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996). With respect to the DOT's liability for its insured employees' negligence, see *Martin v. Dept. of Public Safety*, 257 Ga. 300, 301-303 (2) (357 SE2d 569) (1987).

Although he was on county road 194 and therefore had a duty to stop and yield the right of way before driving into the intersection, whether or not Spivey actually did so was disputed at trial. Mikell and Burch, Spivey's daughters, and Tony Mikell, Spivey's grandson, testified that Spivey had lived on State Highway 187, approximately one mile from the intersection, for 25-30 years before his death and that he traversed same nearly every day. The subject collision occurred when, as he pulled into the intersection, Spivey's vehicle was struck by a logging truck, causing his death.

Plaintiffs alleged that defendants were liable based on four separate acts of negligence with respect to the subject intersection: negligently placing a stop sign on county road 194 too far back from its intersection with State Highway 187; failing to paint a stop line on the county road; failing to reduce the speed limit on State Highway 187 at its intersection with county road 194; and failing to properly maintain the shrubbery adjacent to the intersection, thereby reducing visibility. The jury did not designate for which act or acts it found negligence as to any defendant. Therefore, we must review the evidence as to each of the alleged negligent acts as it would relate to each defendant.

(a) Mikell and Burch contend that the DOT and its employees negligently placed the stop sign on county road 194 too far back from the intersection and failed to paint a white stop line on the road to indicate where to stop.[3] The defendants contend that plaintiffs failed to produce any evidence supporting their claim of negligence by any defendant.

To evaluate plaintiffs' claims regarding the stop sign and the stop line, we must first determine whether such claims sound in ordinary or professional negligence. Because the plaintiffs are challenging the layout of the intersection itself and the choice of traffic control devices which control it, they are asserting that the intersection is negligently engineered and designed. Where, as here, the engineering design of a road is questioned, this Court has held that "[d]esigning roads requires 'engineering services' which have been described as the performance of professional services within the purview of OCGA § 9-11-9.1 [the professional malpractice affidavit statute]." *Jackson v. Dept. of Transp.*, 201 Ga. App. 863, 865 (412 SE2d 847) (1991). Although no such expert affidavit was filed in this case,

---

[3] On appeal, neither party raised the issue of the DOT's responsibility for the county road portion of this intersection. Pursuant to OCGA § 32-2-61 (e), "[e]xcept for public roads within and leading to state parks, the department [of transportation] is prohibited from maintaining any public road not on the state highway system." The evidence showed that county road 194 is not part of the state highway system, but is under the jurisdiction of Clinch County, Georgia. However, as there was some testimony regarding DOT rights of way, and as the DOT has not pursued this issue on appeal, we do not address it.

the defendants did not challenge this failure in its initial responsive pleadings, thereby waiving their right to relief based on plaintiffs' failure in this regard. *Seely v. Loyd H. Johnson Constr. Co.*, 220 Ga. App. 719, 724 (4) (470 SE2d 283) (1996). Given the need for an expert's affidavit, the claim is clearly one for professional negligence, and expert testimony would therefore be required at trial for plaintiffs to meet their burden notwithstanding defendants' failure to raise plaintiffs' failure to comply with OCGA § 9-11-9.1.

Here, plaintiffs presented *no expert testimony* regarding the professional engineering judgment exercised by defendants in designing the intersection. They sought instead to rely upon the testimony of two state troopers who were not qualified engineering experts. One trooper testified that the stop sign on county road 194 was located farther back than normal, and that no stop line was painted on the road to tell drivers where to stop. This trooper also testified that a motorist stopped at the stop sign on county road 194 could not see down State Highway 187 to determine what traffic might be coming. The other trooper also testified that the stop sign was located too far back from the intersection. This testimony fails to establish either the standard of care or breach thereof by expert testimony.

Plaintiffs also relied on portions of the Manual on Uniform Traffic Control Devices (MUTCD), which defendants had admitted on deposition was an authoritative manual on traffic issues. The MUTCD states that "[a] STOP sign should be erected at the point where the vehicle is to stop *or as near thereto as possible*, and *may be supplemented with a Stop line. . . .* Stop lines should be used in both rural and urban areas where it is important to indicate the point, behind which vehicles are required to stop, in compliance with a STOP sign. . . . *If* a Stop line is used in conjunction with a STOP sign, it should ordinarily be placed in line with the STOP sign. However, if the sign cannot be located exactly where vehicles are expected to stop, the Stop line should be placed at the stopping point." (Emphasis supplied.)

Defendants showed by expert testimony of a civil engineering consultant that the MUTCD contains mandatory, advisory, and permissive instructions. While the DOT and its employees are bound by all mandatory instructions contained in the MUTCD, all of the alleged breaches involved permissive or advisory instructions. The expert further testified that the stop sign's placement complied with the cited requirements of the MUTCD, and that the stop sign was in the most appropriate location possible for safety and preservation. He also testified that the failure to have a stop line painted on the road was not a violation of the MUTCD.

Our review of the record indicates that as the defendants' expert testified, the MUTCD itself divides its instructions into mandatory,

advisory, and permissive categories. Because the stop sign and stop line issues fall within the advisory and permissive range, they are necessarily within the discretion of the DOT engineers and its employees. The exercise of such discretion involves the use of professional engineering judgment, and for that reason, it was incumbent upon the plaintiffs to present expert engineering testimony on this issue in order to establish the applicable standard of care and a breach thereof. This they failed to do.

"The law imposes upon persons performing . . . engineering[ ] and other professional and skilled services the obligation to exercise a reasonable degree of care, skill and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions. This standard of care properly is the subject of expert opinion. . . . [I]t was necessary here that plaintiffs establish the standard of care applicable to defendant[s] by the introduction of expert opinion evidence. Expert testimony is required because the court and jury are not permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care." (Citations and punctuation omitted.) *H. Elton Thompson & Assoc., P.C. v. Williams*, 164 Ga. App. 571, 572 (298 SE2d 539) (1982) (physical precedent only).

We have noted that "[t]he average layperson is not familiar with design and function features of traffic control devices," and therefore expert testimony is required to support a claim of professional engineering negligence. *Fouts v. Builders Transport*, 222 Ga. App. 568, 576 (8) (474 SE2d 746) (1996); cf. *Whitley v. Gwinnett County*, 221 Ga. App. 18, 19 (1) (470 SE2d 724) (1996). Moreover, "[w]here and whether to install traffic [devices] were design decisions." *Dept. of Transp. v. Brown*, 267 Ga. 6, 7 (1) (471 SE2d 849) (1996). The MUTCD is not "the exclusive source of engineering and design standards" especially as to permissive and advisory instructions. Id. at 8 (2). Therefore, plaintiffs cannot rely solely on the MUTCD to establish the standard of care where permissive and advisory instructions are involved. Plaintiffs have failed to meet their burden to establish the standard of care and the violation thereof by expert testimony which failure is fatal to their case. See id. at 8.

Our decision in *Dept. of Transp. v. Blair*, 220 Ga. App. 342 (469 SE2d 446) (1996) does not require a different result. *Blair* was a wrongful death action involving claims that the DOT was negligent in maintaining a stop sign in which judgment against the DOT was affirmed on appeal. In *Blair*, however, the plaintiff presented expert traffic and engineering testimony as to the hazard created by the subject stop sign and further proved that the sign itself violated the

*mandatory* requirements of MUTCD. Id. at 343 (1) (a). *Blair* is clearly distinguishable and does not control this case.

(b) Plaintiffs also claim that the defendants negligently failed to reduce the speed limit on State Highway 187, the road on which the logging truck was traveling when it collided with Spivey. Plaintiffs contend that the 55 mph speed limit on State Highway 187 was too high and was a contributing factor in the death of their father.

The only evidence on this issue shows that the 55 mph speed limit on State Highway 187 was mandated by OCGA § 40-6-181 (b) (5). The defendants therefore could only potentially be liable for failing to lower the speed limit from the figure set by statute. Liability for such professional negligence must be shown by expert testimony which plaintiffs have failed to produce.

The MUTCD provides that before the speed limit could be lowered, the DOT must first conduct an engineering and traffic investigation in accordance with established traffic engineering practices. Only after this investigation would the DOT be authorized to lower the speed limit on State Highway 187. OCGA § 40-6-182 also addresses the changing of speed limits in Georgia, and like the MUTCD, it also requires that an engineering and traffic investigation be conducted prior to making any change. What neither the MUTCD nor the statute establishes, however, is *when* the DOT or its employees are required to initiate a change in the speed limit.

Plaintiffs also failed to establish this alleged breach of engineering standards by expert testimony. Indeed, one of plaintiffs' state patrol witnesses testified that no problems with the speed limit had ever been reported. The other patrolman also testified that had the logging truck been traveling at the posted speed limit rather than speeding, the accident would not have occurred.

The defendants' undisputed expert testimony showed that the MUTCD did not require that an engineering and traffic investigation be done absent plans by the DOT to change the speed limit on the subject portion of State Highway 187. The evidence showed that the DOT had no plans to reduce the speed limit in this area requiring a study and had never received any complaints about the speed limit being too high.

(c) At trial, plaintiffs presented evidence that at the time of the wreck, the bushes along State Highway 187 were grown up. They claimed that the DOT negligently failed to keep the bushes cut, and that this failure reduced visibility at the intersection which contributed to the subject collision.

This claim, unlike the stop sign, stop line, and speed limit claims, involves the maintenance of the subject intersection and not its engineering design. We have noted that claims for negligent maintenance do "not necessarily require the exercise of professional skill

and judgment." *Adams v. Coweta County*, 208 Ga. App. 334, 336 (2) (430 SE2d 599) (1993). Accordingly, plaintiffs were not required to present expert testimony on this issue.

The evidence at trial regarding the bushes at the time of the collision came from the driver of the truck. The driver testified only that "the bushes have got it growed up there" at or near the intersection. No other evidence concerning the bushes at the time of the wreck was introduced.

This evidence, without more, is not sufficient to establish the defendants' negligent maintenance of the bushes at the intersection or its contribution to the incident. While the DOT had a duty to maintain the bushes in the subject area, the testimony presented that the bushes were "growed up" does not establish a breach of this duty. Without evidence of how high the bushes were, how high they were allowed to be, how often they were supposed to be cut, or to what extent, if any, they interfered with visibility at the intersection, and how the overgrowth of bushes contributed to the incident, no breach of the duty to cut them can be shown. Other evidence showed that neither bushes nor trees obscured a motorist's vision at the intersection. Plaintiffs' own witness, one of the state troopers, testified that he had never had any trouble negotiating the subject intersection. Accordingly, the defendants' motion for j.n.o.v. should have been granted as to the above issues, and the trial court erred in failing to do so.

2. In light of our holding in Division 1, we need not address the defendants' other enumerated error.

*Judgment reversed. Pope, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 29, 1997.

*Thurbert E. Baker, Attorney General, George P. Shingler, Deputy Attorney General, C. Latain Kell, Senior Assistant Attorney General, Susan J. Levy,* for appellants.

*McNatt, Greene & Thompson, Hugh B. McNatt, Troy L. Greene, Berrien L. Sutton,* for appellees.