A01A0115. THOMPSON et al. v. CITY OF FITZGERALD et al.
(548 SE2d 368)

JOHNSON, Presiding Judge.

Following a period of heavy rains, seven-year-old Shonda Thompson fell into the swollen waters of a creek which runs adjacent to her home and drowned. Rosie Thompson and Clark Thompson, as parents of Shonda and as administrators of her estate, and Thomas Everett, as temporary administrator of the estate of Clark Thompson, sued the City of Fitzgerald and the Fitzgerald Water Department. The City of Fitzgerald moved for summary judgment, which the trial court granted. The plaintiffs appeal the trial court's order. Because no genuine issue of material fact exists regarding the City of Fitzgerald's liability, we affirm the trial court's grant of summary judgment to the City.

On appeal of the grant of summary judgment, this Court applies a de novo review of the evidence to determine whether any question of material fact exists.[1] Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[2] A defendant meets this burden by

showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no

[1] *Moore v. Food Assoc.*, 210 Ga. App. 780 (437 SE2d 832) (1993).
[2] OCGA § 9-11-56 (c).

evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . All of the other disputes of fact are rendered immaterial.[3]

If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue.[4]

In the present case, the evidence shows that the City of Fitzgerald did not own the creek or have legal control of the property surrounding the creek. While the City occasionally cleaned out or dredged the creek when it became clogged and caused flooding to adjacent property, this action was performed only at the request of those landowners. However, the City did not and does not otherwise maintain the creek. In addition, although some of the City's drainage system flows into the creek, since it is the low point in that area of town, there is no evidence that the City has done anything to cause the volume of water in the creek to exceed that which would naturally occur.

1. The appellants claim that the trial court erred in granting the City of Fitzgerald's motion for summary judgment on the issue of negligence. Since there is no evidence of causation in this case, the trial court did not err.

In this case, the direct cause of Shonda's death was drowning resulting from a large quantity of swiftly flowing water. The question to be answered is whether any act or omission on the part of the City of Fitzgerald reasonably contributed, wholly or partly, to the situation which caused Shonda's death. To answer this question we must look to the evidence and determine (1) the cause of the creek's increased volume and (2) who was in control of the creek and responsible for its maintenance.

As to the cause of the creek's increased volume, the appellants provided evidence that the City's drainage system ultimately finds its way into the creek. However, the appellants failed to provide any evidence showing that this design is flawed or that this design causes or contributes to the creek's increased water level beyond that which would occur naturally. There is also no evidence that the City's action in occasionally cleaning out the creek at the request of adjacent landowners in any way contributed to Shonda's death.

As to the question of control and maintenance, the appellants contend that the City had a duty to maintain the creek and failed to perform this duty. Although the City occasionally dredged or cleaned out the creek, there is no evidence that the City was responsible for

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[4] *Febuary v. Averitt Properties*, 242 Ga. App. 137 (528 SE2d 880) (2000).

maintaining the creek. The determination of who was responsible for the upkeep and maintenance of the creek, and thus who would have been negligent in failing to properly maintain it, rests on who owned the property that was the site of the creek and, most particularly, who had legal control over the premises.[5] As this Court has previously stated,

> Control as used by the cases equates with a right to possess or exercise dominion over another's property, not the mere act of providing upkeep thereon. Otherwise, if one neighbor periodically but voluntarily cuts part of another neighbor's lawn he might be found in control of that portion of the other's yard for a period of time other than when he was actually performing upkeep. Instead, such party is not liable for a defective or dangerous condition on the land unless he was actually negligent by creating, causing or contributing to the dangerous situation.[6]

In the present case, it is undisputed that the City neither owned nor had legal control of the creek. The appellants have failed to produce any evidence suggesting that the City had a right to possess or exercise dominion over the creek. Thus, there was no basis for the City's liability at any time other than when it was physically present on the property.[7] The trial court did not err in granting the City of Fitzgerald's motion for summary judgment on this ground.

2. The appellants claim that the trial court erred in granting the City of Fitzgerald's motion for summary judgment on the issue of public nuisance. This contention fails because the creation or maintenance of a nuisance chargeable to the City cannot exist absent action by the City or a failure to act when under a legal duty to do so.

The Supreme Court has set out three guidelines to define a nuisance for which a city may be held liable.[8] First, the defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. Second, the act must be of some duration, and the maintenance of the act or defect must be continuous or regularly repetitious. Third, the city must have failed to act within a reasonable time after knowledge of the defect or dangerous condition.

The defect or misfeasance alleged by the appellants in this case is that the creek in which Shonda drowned was a public nuisance because it caused flooding to the homes, streets, and the ditch in

---

[5] *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 515 (317 SE2d 853) (1984).

[6] Id. at 521-522 (2) (a).

[7] See id. at 522.

[8] *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979).

which their daughter drowned. There is no dispute that the City did not own or maintain the creek. However, the appellants allege that (1) the City designed the city roadways to drain into drainage ditches that flowed to the lowest point in the city, which is where this creek is located, and (2) the City knew that the creek was prone to flooding yet failed to remedy the situation. While the appellants contend that the City's actions in designing the city rights-of-way and drainage ditches to flow into this creek caused a continuous nuisance by causing flooding to surrounding homes and streets, there is no evidence that the City has done anything to contribute to the rise of water in the creek or to otherwise affect the natural drainage pattern and the volume of water in the creek and its environs.

Unlike the cases cited by the appellants, there is no evidence here that the City created any condition which contributed to or caused Shonda's death. There is no evidence supporting the appellants' contention that the City's water drainage system is flawed. And, the record is devoid of any evidence suggesting that the City of Fitzgerald had a right to possess or exercise dominion over the creek. Furthermore, there is nothing to suggest that the City's occasional removal of debris from the creek in any way contributed to Shonda's death.

Moreover, a public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals.[9] This language does not mean that every person in the area must have been actually hurt or injured to show a public nuisance; it is sufficient if the public nuisance injures those of the public who may actually come into contact with it.[10] The undisputed evidence shows that no other person has ever been personally injured as a result of the creek's increased water volume. "Inasmuch as a public nuisance must injure all members of the public who come into contact with it, the evidence to the contrary effectively erased [the appellants'] public nuisance cause of action."[11]

3. The appellants contend the trial court erred in entering final judgment in favor of the City of Fitzgerald because the trial court did not address their public nuisance argument. This contention lacks merit. While the trial court's order does not specifically use the word "nuisance," it does grant the City's motion for summary judgment and finds that the City is entitled to summary judgment as a matter of law. The order does not limit the trial court's finding to the appellants' negligence claim, nor does it reserve a ruling as to the appel-

---

[9] OCGA § 41-1-2.

[10] *City of Douglasville v. Queen*, 270 Ga. 770, 774 (4) (514 SE2d 195) (1999).

[11] (Citations and punctuation omitted.) Id.; see also *Howard v. Gourmet Concepts Intl.*, 242 Ga. App. 521, 523 (1) (b) (529 SE2d 406) (2000).

lants' public nuisance claim. Since the trial court is not required to make findings of fact and conclusions of law in ruling on a motion for summary judgment,[12] and because we found in Division 2 that the appellants' public nuisance claim was not supported by the evidence, the trial court did not abuse its discretion in issuing a final order pursuant to OCGA § 9-11-54 (b).

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 7, 2001 —
RECONSIDERATION DENIED MARCH 22, 2001.

*Salter, Shook & Craig, Mitchell M. Shook, Jason A. Craig,* for appellants.

*Whelchel, Whelchel & Carlton, James C. Whelchel, Walters, Davis & Pujadas, J. Harvey Davis,* for appellees.

---

[12] See *Thomas v. DeKalb County,* 227 Ga. App. 186, 188 (1) (489 SE2d 58) (1997).