A11A1392. ALBERTSON et al. v. CITY OF JESUP.
(718 SE2d 4)

DILLARD, Judge.

Ronald D. Albertson, individually and on behalf of his minor daughter, Linsey Albertson (collectively "Albertson"), appeals the

---

trial court's grant of summary judgment to the City of Jesup ("the City"). Albertson argues that the trial court erred in granting summary judgment against his claims that the City was negligent in its placement and maintenance of a stop-sign, which also constituted a nuisance. Specifically, he contends that this resulted in his failure to see the sign and to stop, which led to a subsequent collision with another vehicle. For the reasons noted infra, we affirm the trial court's grant of summary judgment to the City.

Viewed in the light most favorable to Albertson,[1] the record shows that he and his daughter were driving through Jesup on their way home in his pickup truck on the afternoon of July 25, 2004. They traveled westbound through a residential area on Bay Street and eventually reached its intersection with Fourth Street. Despite the undisputed presence of a stop-sign, Albertson did not see the sign and, thus, neither slowed nor stopped his vehicle prior to entering the intersection at 25-30 miles per hour.[2] Consequently, a vehicle passing through in a southbound direction collided with Albertson's truck, resulting in injuries to both Albertson and his daughter and totaling his truck.

Albertson became aware of the stop-sign only after the collision, when he noticed that it was obscured by foliage and placed an estimated ten-feet from the roadside in what he described as a concrete "bucket."[3] Thereafter, Albertson filed a complaint, in which he alleged that the City "failed to maintain the foliage . . . , negligently failed to place the stop sign . . . in a location which would render the stop sign visible to persons operating a vehicle . . . , and failed to provide a clear line of sight for vehicles traveling on [the street]." The City subsequently filed two motions for summary judgment as to Albertson's claims for negligence and a nuisance. The trial court granted the motions, finding that (1) as to the negligence claim, Albertson's case was one for professional negligence and he lacked the expert testimony that would be necessary at trial to establish same, and (2) as to the nuisance claim, Albertson could not show that the City had the required notice of a defect at the intersection. This appeal by Albertson follows.

---

[1] *See Harmon v. Innomed Techs., Inc.*, 309 Ga. App. 265, 265 (709 SE2d 888) (2011) ("We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party." (footnote omitted)).

[2] It is undisputed that Albertson was neither on the phone nor under the influence of alcohol or illegal drugs at the time of the accident.

[3] Albertson later testified and stipulated that despite his failure to observe the sign on the day in question, it is visible at some point prior to reaching the intersection. Additionally, a retired state patrolman who investigated the accident and testified on Albertson's behalf noted in his investigatory summary that in traveling down the street as Albertson had, "one would almost have to know that a regulatory sign is positioned on Bay Street at the intersection."

At the outset, we note that summary judgment is appropriate when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[4] This burden is met by a defendant when the court is shown "that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case."[5] And if the moving party meets this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[6] With these guiding principles in mind, we turn now to Albertson's enumerations of error.

1. *Negligence.* Albertson first argues that the trial court erred in holding sua sponte that his claim was one for professional negligence, requiring expert testimony. Instead, Albertson contends that the placement of the stop-sign and the maintenance of the surrounding foliage are questions of simple negligence and, accordingly, that the grant of summary judgment was improper. Though for different reasons, we affirm the trial court's grant of summary judgment.[7]

The trial court disposed of Albertson's negligence claim by holding that it was one for professional negligence and that Albertson lacked the requisite expert testimony to create a genuine issue of material fact on this issue. And although there may be some merit to the trial court's holding,[8] we note that the City argued in its motion for summary judgment that it was entitled to sovereign immunity on Albertson's negligence claim, and sovereign immunity is a threshold issue that the trial court was required to address before reaching the merits of any other argument.[9]

On appeal, the City again argues, inter alia, that it is entitled to

---

[4] *Thompson v. City of Fitzgerald*, 248 Ga. App. 725, 725 (548 SE2d 368) (2001) (footnote omitted).

[5] *Id.* at 725-26 (footnote and punctuation omitted).

[6] *Id.* at 726 (footnote omitted).

[7] *See Jones v. Bd. of Regents of the Univ. Sys. of Ga.*, 262 Ga. App. 75, 77 (1) (585 SE2d 138) (2003) ("Summary judgment may be affirmed if it is right for any reason." (footnote omitted)).

[8] *See Johnson v. Dep't of Transp.*, 245 Ga. App. 839, 839 (538 SE2d 879) (2000) ("With respect to alleged defects in maintenance of the roadway, [the plaintiffs] were required to present evidence of the proper maintenance standard, the deviation from that standard, and the causal connection between the deviation and the collision." (citation omitted)); *Dep't of Transp. v. Mikell*, 229 Ga. App. 54, 58 (1) (a), 59 (1) (c) (493 SE2d 219) (1997) (holding that expert testimony was required to establish a breach of the standard of care related to stop-sign placement and that, although expert testimony was unnecessary, plaintiff needed to establish a standard of care as to the proper maintenance of surrounding foliage to prove negligence).

[9] *See generally Dep't of Transp. v. Dupree*, 256 Ga. App. 668, 670-76 (1) (a)-(c) (570 SE2d 1) (2002) (explaining that the plaintiff's burden to establish a waiver of sovereign immunity is a threshold issue, which determines whether a trial court has subject matter jurisdiction over a case).

sovereign immunity on Albertson's negligence claim; and Albertson has made no attempt to address or in any way rebut this argument, even though he had the burden of doing so as the party who would benefit from any waiver of sovereign immunity.[10] Thus, Albertson has failed to show that the City waived sovereign immunity in this case, and dismissal was proper. Indeed, under Georgia law, "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers."[11] And it is well established that the maintenance of a stop-sign is a governmental function for which a municipality has sovereign immunity against claims of negligence.[12]

Here, Albertson claimed that the City was negligent in its maintenance of the foliage surrounding the stop-sign and in its failure to replace the sign to its permanent location after it appeared to have been moved, leading to an obstructed view and his failure to see the sign on the afternoon in question. It is, however, well established in our case law that the City has not waived sovereign immunity as to these allegations.[13] And because "it is the obstruction

---

[10] *See, e.g., Naraine v. City of Atlanta*, 306 Ga. App. 561, 562 (1) (a) (703 SE2d 31) (2010) ("Inasmuch as [the plaintiff] was seeking to benefit from the waiver of sovereign immunity, she had the burden of proof." (citation omitted)). *Cf. Norris v. Emanuel County*, 254 Ga. App. 114, 116 (1) (561 SE2d 240) (2002) ("Because the defendants did not raise the issue of sovereign immunity in their motion for summary judgment, [the plaintiff] was not required to rebut this issue." (footnote omitted)). Nothing in the record indicates that the City had in place an insurance policy that would waive sovereign immunity. *See* OCGA § 36-33-1 (a) ("A municipal corporation shall not waive its immunity by the purchase of liability insurance . . . unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy."). *Compare Brockman v. Burnette*, 184 Ga. App. 66, 67 (360 SE2d 655) (1987) (reversing grant of summary judgment on claim of sovereign immunity under similar underlying factual circumstances when it was "undisputed that at the time of the accident the city was insured under a general liability insurance policy"), *with Cyr v. Mayor & Aldermen of Savannah*, 188 Ga. App. 261, 261 (372 SE2d 659) (1988) (upholding grant of summary judgment on claim of sovereign immunity under similar underlying factual circumstances when "[t]he appellants [did] not contend that the city had in force any policy of liability insurance which would cover their injuries" (citation omitted)).

[11] OCGA § 36-33-1 (b); *see also* OCGA § 36-33-2 ("Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the act.").

[12] *See, e.g., Cyr*, 188 Ga. App. at 261 ("The operation and maintenance of traffic lights and other traffic control devices is a governmental function conducted on behalf of the public safety and for the negligent performance of which municipal corporations are not liable." (citation and punctuation omitted)); *Bowen v. Little*, 139 Ga. App. 176, 176 (228 SE2d 159) (1976) (noting that the failure to maintain a stop sign has been held not actionable under a theory of negligence); *Arthur v. City of Albany*, 98 Ga. App. 746, 747-48 (2) (106 SE2d 347) (1958) (explaining that the decision of whether to erect a stop sign is a legislative and judicial function, and that "determining whether to maintain the stop sign . . . and . . . whether to replace it once it has been destroyed or removed" are also exercises of a legislative and judicial function); *see also Christensen v. Floyd County*, 158 Ga. App. 274, 274 (2) (279 SE2d 723) (1981); *Barnett v. City of Albany*, 149 Ga. App. 331, 332 (2) (254 SE2d 481) (1979).

[13] *See Cyr*, 188 Ga. App. at 261 (sovereign immunity barred plaintiffs' claim that a

of the [stop-sign], and not obstruction of the sight of oncoming traffic, which [Albertson] contend[s] caused [him] to advance and collide," sovereign immunity bars his recovery "for even negligent exercise of this governmental function."[14] Accordingly, the grant of summary judgment was appropriate.

2. *Nuisance.* Albertson next argues that the trial court erred in holding that there was no evidence that the City had knowledge of any defect in the maintenance of the stop-sign in question and, accordingly, that the grant of summary judgment was improper. We disagree.

First, we note that Albertson failed to cite any supporting authority for this enumeration of error in his brief, as is required by the rules of this Court.[15] Nevertheless, we agree with the trial court that the City was entitled to summary judgment on this claim as well.[16] Indeed, even viewed in the light most favorable to Albertson, there is a decided lack of evidence that the City was aware of any defect at the subject intersection.

And in order to hold the City liable for maintaining a nuisance, Albertson must show the following:

> (1) the alleged defect or degree of misfeasance must exceed mere negligence; (2) the act must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and (3) the municipality must have failed to act within a reasonable time after knowledge of the defect or dangerous condition.[17]

But here, Albertson's sole evidence that the City was aware of a problem regarding the visibility of the subject stop-sign came from

---

stop-sign was "totally obscured by vegetation, foliage and large trees"); *Barnett*, 149 Ga. App. at 332 (2) (plaintiff's claim that stop-sign was obscured by fallen tree was precluded by sovereign immunity); *Arthur*, 98 Ga. App. at 747-48 (city immune from plaintiff's claim that it failed to replace stop sign that was taken down).

[14] *Cyr*, 188 Ga. App. at 262 (Beasley, J., concurring specially); *see also supra* note 13. *Compare* OCGA § 32-4-91 (a) ("A municipality shall plan, designate, improve, manage, control, construct, and maintain an adequate municipal street system[.]"); OCGA § 32-4-93 (a) ("A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.").

[15] *See* Ct. App. R. 25 (a) (3).

[16] The City would not be entitled to sovereign immunity on Albertson's claim of nuisance. *See Bowen*, 139 Ga. App. at 177 ("'[W]here the city elects to erect a stop sign at an intersection to regulate traffic but then allows it to become obscured by foliage, the defective maintenance may itself become a nuisance.").

[17] *Shuman v. Mayor & Aldermen of Savannah*, 180 Ga. App. 427, 427-28 (349 SE2d 239) (1986); *see also City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979).

narratives contained within police reports for two previous accidents at the intersection. However, when Albertson questioned the then-city manager regarding the prior accidents, he testified that he was unaware of any complaints regarding foliage; that other than the police reports introduced into evidence, he knew of no other accidents that would call the visibility of the stop-sign at the intersection into question; and that he passed through the same intersection multiple times each week without incident. And while Albertson argues that the police reports prove that the City was on notice as to problems with the visibility of the subject stop-sign, these reports were inadmissible hearsay.[18] Thus, Albertson failed to establish this necessary element to prove that the City maintained a nuisance.[19]

Accordingly, for all the foregoing reasons, we affirm the trial court's grant of summary judgment.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 8, 2011 —
RECONSIDERATION DENIED OCTOBER 27, 2011 — ▮▮▮▮▮

*Jones, Osteen & Jones, Billy N. Jones, Carl R. Varnedoe,* for appellants.

*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Terry L. Readdick, Laura E. Roberts,* for appellee.

---

[18] *See Brown v. State,* 274 Ga. 31, 33 (1) (549 SE2d 107) (2001) ("[N]arratives contained in police reports generated in connection with police investigations are not the appropriate subject of an exception to the hearsay rule." (footnote omitted)); *Scott v. LaRosa & LaRosa, Inc.,* 253 Ga. App. 489, 490 (559 SE2d 525) (2002) (same); *see also Matthews v. Wilson,* 119 Ga. App. 708, 711 (168 SE2d 864) (1969) ("[A]dmissibility of evidence on motion for summary judgment is governed by the rules relating to form and admissibility of evidence generally, so that evidence inadmissible on a hearing of the case would be inadmissible on motion for summary judgment." (citation omitted)).

[19] *Compare Thompson v. City of Atlanta,* 274 Ga. App. 1, 4 (1) (616 SE2d 219) (2005) (holding that plaintiff failed to establish notice when city "submitted evidence that it had not received notice of street defects in the area of the intersection, and the only complaint the city received concerning drainage problems near the intersection occurred . . . nearly three years before the incident here"), *with Carter v. Mayor & Aldermen of City of Savannah,* 200 Ga. App. 263, 265 (1) (407 SE2d 421) (1991) (physical precedent only) ("[E]vidence was presented that the City had a recurring problem with vandals removing signs from the City streets and that this problem was especially acute in Savannah because the soil is so loose and sandy, thereby allowing signs to be easily uprooted.").