**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2023**

# In the Court of Appeals of Georgia

A23A0404. MUNRO et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.

MCFADDEN, Presiding Judge.

This is a wrongful death action brought by the parents of Ashleigh Munro against the Georgia Department of Transportation ("DOT"). The trial court granted the DOT's motion to dismiss under OCGA § 9-11-12 (b) (1) for lack of subject-matter jurisdiction based on sovereign immunity. The Munros appeal, arguing that the trial court erred in dismissing their claims for negligent design and negligent inspection because the DOT waived sovereign immunity as to those claims. We hold that the Munros have not met their burden of showing a waiver of sovereign immunity on their negligent-design claim. But we agree that the Munros have met

their burden of showing a waiver of sovereign immunity on their negligent-inspection claim. So we affirm in part and reverse in part.

1. *Factual and procedural background.*

Ashleigh Munro was a passenger in a vehicle driving on Thigpen Trail in Colquitt County. As the vehicle entered Thigpen Trail's intersection with State Route 37, a tractor trailer traveling on Route 37 was also crossing the intersection. The vehicles collided. Munro died as a result of the injuries she sustained in the collision. Her parents filed this action, alleging that the DOT negligently designed, installed, maintained, and inspected the intersection.

The DOT answered the complaint and simultaneously filed multiple motions, including a motion to dismiss for lack of subject-matter jurisdiction on the ground that it had not waived sovereign immunity; a motion for summary judgment; and a motion to exclude the testimony of the Munros' expert witness, Herman Hill. The Munros filed responses, and the trial court conducted a hearing on the motions. In a one-sentence order, the court granted the DOT's motion to dismiss on the ground of sovereign immunity and denied the DOT's other motions as moot. The Munros filed this appeal.

2. *Sovereign immunity and standard of review.*

2

The Georgia Constitution authorizes the legislature to waive the state's sovereign immunity. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a) and (e). The Georgia Tort Claims Act, OCGA § 50-21-20 et seq., declares the public policy of this state to be "that the state shall only be liable in tort actions within the limitations" set out in the Act. OCGA § 50-21-21 (a). Consequently, although the Act waives the state's sovereign immunity, OCGA § 50-21-23, that waiver is limited by certain specified exceptions and limitations, which are also set forth in the Act. Or, stated succinctly, the state is only liable in tort actions within the limitations of the Act. Further, any suit brought to which an exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject[-]matter jurisdiction. The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver. . . .

*Diamond v. Ga. Dept. of Transp.*, 326 Ga. App. 189, 190 (1) (756 SE2d 277) (2014) (citations and punctuation omitted). "We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law." *Ga. Dept. of Transp. v. Wyche*, 332 Ga. App. 596, 597 (774 SE2d 169) (2015) (citation and punctuation omitted). Although "[f]actual findings are sustained if there is evidence supporting them[,]" id. (citation and punctuation omitted), here the trial court made no factual findings.

3. *Negligent design*.

The Munros argue that the trial court erred in dismissing their negligent-design claim because the design exception to the waiver of sovereign immunity does not apply. That exception provides:

> The state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design[.]

OCGA § 50-21-24 (10).

(a) *Design of the intersection*.

The Munros alleged that the intersection had been negligently designed because the angle of the intersecting roads was 60 degrees. They argue that the design exception to the waiver of sovereign immunity does not apply to this allegation because the intersection's design was not "prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design[.]" OCGA § 50-21-24 (10).

To sustain this argument, the Munros were required to prove the "generally accepted engineering or design standards in effect at the time of preparation of the . . . design," OCGA § 50-21-24 (10), which required them to submit expert testimony.

4

*Reidling v. City of Gainesville*, 280 Ga. App. 698, 702 (1) (634 SE2d 862) (2006).

"Expert testimony is required because the court and jury are not permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care." *Dept. of Transp. v. Mikell*, 229 Ga. App. 54, 58 (1) (a) (493 SE2d 219) (1997) (citation and punctuation omitted).

To prove the applicable standards, the Munros relied on the testimony of their expert, Herman Hill. But here the Munros faced another hurdle, a provision of our Evidence Code. That provision requires expert witnesses in professional malpractice actions to have been licensed at the time of the alleged act or omission.

> [I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert . . . [w]as licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time[.]

OCGA § 24-7-702 (c) (1).[1]

_____

[1] The statute was enacted as former OCGA § 24-9-67.1 (c) (1) and became effective February 16, 2005. *Nathans v. Diamond*, 282 Ga. 804, 804 (654 SE2d 121)

5

The parties do not dispute that the claim for negligent design of the intersection is a claim for professional engineering malpractice, see *Lennen v. Dept. of Transp.*, 239 Ga. App. 729, 730 (1) (521 SE2d 885) (1999) (physical precedent only), so this evidentiary rule applies.[2] *Dubois v. Brantley*, 297 Ga. 575, 580-581 (2) (775 SE2d 512) (2015) ("In a professional malpractice case, an expert on the [applicable] standard . . . must have been licensed by an appropriate regulatory agency to practice his or her profession or teaching in the profession at the time of the alleged negligence at issue.") (citation and punctuation omitted).

_____

(2007). It was retained verbatim in our 2013 Evidence Code as OCGA § 24-7-702 (c) (1). It has no equivalent provision in the Federal Rules of Evidence.

[2] The DOT asserted its OCGA § 24-7-702 (c) (1) argument in its motion to exclude the testimony of Herman Hill, which it filed simultaneously with its motion to dismiss. In a footnote in the motion to dismiss, the DOT "incorporated . . . by reference" the argument to exclude Hill's testimony. The Munros argued against the application of the statute in their brief replying to the motion to exclude Hill's testimony.

Both parties argue the statute on appeal. So, although the trial court denied as moot the DOT's motion to exclude Hill's testimony on this basis, we will consider the OCGA § 24-7-702 (c) (1) argument in our review of the grant of the motion to dismiss. See *Merchant Law Firm v. Emerson*, 301 Ga. 609, 614 (1) (c), 615 (2) (a), 616 (2) (b) (800 SE2d 557) (2017) (affirming dismissal of three of appellant's claims as right for any reason); *Craigo v. Azizi*, 301 Ga. App. 181, 187 (3) (687 SE2d 198) (2009) (affirming as right for any reason the dismissal of complaint on the basis of expert's failure to satisfy former OCGA § 24-9-67.1 (c) (1), the predecessor to OCGA § 24-7-702 (c) (1)).

6

Hill was not licensed as a professional engineer until 1969, which, the parties agree, was after the intersection had been designed. So under OCGA § 24-7-702 (c) (1), he could not testify about the "generally accepted engineering or design standards *in effect at the time of preparation of the plan or design*." OCGA § 50-21-24 (10) (emphasis added). The Munros cite multiple cases to demonstrate that Georgia courts have repeatedly found engineering experts competent to testify about generally accepted engineering standards applicable to road designs completed long before the experts were licensed. But those cases all were decided before the statute at issue was enacted.

The Munros argue that the failure to prepare an original road design in substantial compliance with generally accepted engineering or design standards constitutes an ongoing omission on the part of the DOT and that Hill can testify about DOT's failure to remedy the defective design from 1969, the time he was licensed, to the present. But the crucial point the Munros had to prove to avoid the application of the design exception in OCGA § 50-21-24 (10) is that the design of the intersection did not comply with "generally accepted . . . standards in effect at the time of [its] preparation." So the time of the design's preparation is the relevant time for purposes of OCGA § 24-7-702 (c) (1), and it is undisputed that Hill was not licensed then.

The Munros also argue that they are not claiming the negligent design of the intersection but instead a failure to improve the intersection from the prior negligent design. But to make such a failure-to-improve claim, the Munros were required first to show that the design of the intersection did not comply with the standards in effect at the time of the preparation of the design. *Dept. of Transp. Cox*, 246 Ga. App. 221, 223 (540 SE2d 218) (2000). See also *Murray v. Ga. Dept. of Transp*., 284 Ga. App. 263, 267 (2) (644 SE2d 290) (2007) (holding that "[i]n the absence of any evidence that the design of the intersection failed to comply with then existing engineering and design standards," the design exception of OCGA § 50-21-24 (10) "rendered the [s]tate DOT immune from any claim that it proximately caused the fatal accident because it negligently failed to upgrade the design of the intersection to higher standards to make it safer.") (physical precedent only). And for the reasons discussed above, they have not made this showing.

We recognize that the application of OCGA § 24-7-702 (c) (1) effectively destroys an entire class of claims for the negligent design of roads, as many roads in Georgia were designed long before any potential living expert witness had been licensed. And perhaps the General Assembly did not intend this result. "But, this [c]ourt will not engage in such speculation. If the statutory limitation is unintended

8

or requires alteration, it is a matter for the General Assembly." *Orr v. Ga. Transmission Corp.*, 281 Ga. 754, 757 n.5 (642 SE2d 809) (2007). Rather, "in considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant." *Ham v. City of Milton*, 358 Ga. App. 694, 697 (1) (856 SE2d 60) (2021) (citation and punctuation omitted).

The Munros briefly argue that even if Hill cannot testify as an expert about the standards applicable when the design of the intersection was prepared, his "expert opinions and supporting literature" are admissible as "other competent evidence" that shows the intersection was not designed in compliance with the applicable standards. It is true that we have held that negligent-design claims must be supported by expert testimony or "other competent evidence." See, e.g., *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 179 (1) (460 SE2d 812) (1995) ("The highway design exception to the Georgia Tort Claims Act requires that expert testimony or other competent evidence be submitted to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared."). But we have never specified what this "other competent evidence" might be. And if OCGA § 24-7-702 (c) (1) prevents Hill from testifying

9

that the design of the intersection did not comply with "generally accepted . . . standards in effect at the time of [its] preparation," OCGA § 50-21-24 (10), we do not see how his expert opinions can be characterized as "other competent evidence" that the design was not prepared in substantial compliance with generally accepted engineering or design standards at the time the plan was prepared.

The Munros have not cited, and we have not found, any opinion holding that inadmissible expert testimony can be characterized as "other competent evidence" sufficient to show engineering malpractice. "Road design requires professional engineering services. Unless the [Munros] can produce an engineer's competent testimony that the DOT's design for [the intersection] was not in substantial compliance with the applicable engineering and design standards, their claim cannot withstand the DOT's motion [to dismiss]." *Murray v. Dept. of Transp.*, 240 Ga. App. 285, 285-286 (523 SE2d 367) (1999). See also *Dept. of Transp. v. Mikell*, 229 Ga. App. at 58 (1) (a) ("expert testimony is required to support a claim of professional engineering negligence").

(b) *Traffic control devices and speed breakers*.

The Munros argue that the trial court erred in dismissing their negligent-design claim to the extent it was based on the DOT's breach of its duty to warn motorists

10

through the installation of "appropriate signage, speed breakers, warning devices, including flashing caution lights or other warning signage."

"Where and whether to install traffic [control devices] were design decisions." *Dept. of Transp. v. Brown*, 267 Ga. 6, 7 (1) (471 SE2d 849) (1996). Because "the average layperson is not familiar with design and function features of traffic control devices, . . . . expert testimony is required to support a claim of professional engineering negligence [based on the choice and installation of traffic control devices]." *Dept. of Transp. v. Mikell*, 229 Ga. App. at 58 (1) (a). So to avoid the design exception to the waiver of sovereign immunity, the Munros were required to present expert testimony that the choice and installation of traffic control devices were not "in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design[.]" OCGA § 50-21-24 (10). As detailed in Division 3 (a), Hill cannot testify about the standards in effect when the intersection was designed.

Like their claim that the DOT failed to improve the intersection from the prior defective design, the Munros argue that the DOT breached its duty to remedy, through the addition of traffic control devices, the dangerous nature of the

11

intersection, because it was on notice that a dangerous condition existed. And, they argue, Hill could testify about this duty.

But as detailed above, to make such a failure-to-improve claim, the Munros were required first to show that the design of the intersection did not comply with the standards in effect at the time of the preparation of the design. See *Cox*, 246 Ga. App. at 223. Hill cannot testify that the design of the intersection did not comply with the standards in effect at the time of the preparation of the design. So the Munros have not met their burden of showing a waiver of sovereign immunity on this negligent-design claim.

4. *Negligent inspection*.

The Munros argue that the trial court erred by dismissing their claim that the DOT breached its duty to inspect the intersection to determine whether it was properly maintained. We agree.

The Georgia Tort Claims Act, OCGA § 50-21-20 et seq., waives sovereign immunity for losses resulting from the inadequate or negligent inspection of state property. That rule is derived from a three-step analysis. The Act generally waives "sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment[.]" OCGA § 50-21-23 (a). It

12

establishes an exception to that waiver for claims alleging negligent inspection or failure to inspect. OCGA § 50-21-24 (8). But it goes on to establish an exception to the exception, in other words to waive sovereign immunity, where the inspection is of state property. Id. The statute provides,

> The state shall have no liability for losses resulting from … [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety[.]

OCGA § 50-21-24 (8).

As the Munros point out, the DOT conceded in its briefing before the trial court that it has not claimed sovereign immunity to their claims on the basis of the Tort Claims Act's inspection exception. Indeed, the DOT agrees that it did not invoke the inspection exception in the trial court, and it does not raise that exception on appeal.

Instead, the DOT argues that the Munros' negligent-inspection claim is inextricably intertwined with their negligent-design claim. Consequently, the DOT argues, the exception to the waiver of sovereign immunity on the negligent-design

claim means that the DOT is also entitled to dismissal of the negligent-inspection claim.

But the Munros alleged in their complaint that the DOT negligently inspected the intersection, apart from its alleged negligent design of the intersection. In their trial court papers, they elaborated on their allegation, claiming that the DOT failed to inspect the intersection to ensure that the intersection was properly maintained by the removal of hazardous vegetation. See *Comanche Constr. v. Dept. of Transp.*, 272 Ga. App. 766, 768 (2) (613 SE2d 158) (2005) (physical precedent only) ("The phrase 'inspection powers or functions' [in OCGA § 50-21-24 (8)] includes . . . an inspection of physical property to determine whether it complies with accepted safety standards. . . .").

"[T]he DOT had a duty to maintain the bushes in the subject area. . . ." *Dept. of Transp. v. Mikell*, 229 Ga. App. at 60 (1) (c). See also OCGA § 32-2-2 (a) (1) (the DOT "shall have control of and responsibility for all . . . maintenance . . . upon the state highway system . . . ."). We agree with the Munros that "[t]his claim . . . involves the [inspection and] maintenance of the subject intersection and not its engineering design." *Dept. of Transp. v. Mikell*, 229 Ga. App. at 59 (1) (c).

14

So we also "agree [with the Munros] that immunity is waived to the extent that the DOT's role included inspection of the [s]tate roadway and intersection itself to detect hazards or to determine compliance with laws, regulations, codes, or ordinances." *Dept. of Transp. v. Kovalcik*, 328 Ga. App. 185, 188 (1) (a) (761 SE2d 584) (2014). The trial court erred in dismissing the negligent-inspection claim.

*Judgment affirmed in part and reversed in part. Brown and Markle, JJ., concur.*