**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0694.   DEPARTMENT   OF   TRANSPORTATION   v.   DO-036
KOVALCIK et al.

DOYLE, Presiding Judge.

The Georgia Department of Transportation ("DOT") appeals from the trial court's denial of its motion seeking dismissal[1] of tort claims brought by Edward and Bernadette Kovalcik, as parents of Stephanie Kovalcik (deceased), and Edward Kovalcik as administrator of Stephanie's estate. The DOT argues that the trial court erred by ruling that the Kovalciks' claims were not barred by sovereign immunity. For the reasons that follow, we affirm in part and reverse in part.[2]

---

[1] The DOT's motion was styled as a motion for summary judgment seeking dismissal of the suit. For purposes of this appeal, we refer to it as a motion to dismiss.

[2] A related case, *City of Atlanta v. Kovalcik*, Case No. A14A0768, is pending in this Court's April 2014 term. The cases arise from the same proceeding, and on motion by the appellees in each case, we have consolidated the records for both

"We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them."[3]

The evidence shows that the DOT, the City of Atlanta, and the Buckhead Community Improvement District[4] ("BCID") began planning a road improvement project to redesign a portion of Peachtree Road ("Project"), a State route within the City limits. In February 2004, the DOT and the City entered into an agreement to undertake certain improvements including the Project. The agreement stated that the City would

> accomplish all of the design activities for the project . . . in accordance with the [DOT's] Plan Development Process, the applicable guidelines of the American Association of State Highway and Transportation

---

appeals.

[3] (Punctuation omitted.) *Ga. Dept. of Corrections v. James*, 312 Ga. App. 190, 193 (718 SE2d 55) (2011). See generally *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 673 (1) (b) (570 SE2d 1) (2002) ("[u]nder OCGA § 50-21-24, waiver of sovereign immunity may be a mixed question of law and fact for the trial court's determination").

[4] The BCID is a taxation entity of local government created by law pursuant to the Georgia Constitution of 1983, Art. IX, Sec. VII, par. I.

Officials . . . , the [DOT's] Standard Specifications Construction of Roads and Bridges, the [DOT's] Plan Presentation Guide, Project schedules, and applicable guidelines of the [DOT].

The contract further provided that the DOT

shall review and has approval authority for all aspects of the Project provided however this review and approval does not relieve the City of its responsibilities under the terms of this agreement. The [DOT] will work with the [Federal Highway Administration] to obtain all needed approvals with information furnished by the City.

Pursuant to an agreement between the BCID and the City, the BCID retained URS Corporation to deliver construction plans that included road design, signage, pavement markings, curbs, traffic signals, and landscaping. URS prepared the plans and, through an iterative process of review and feedback, the DOT approved them.

In January 2006, the DOT awarded a construction contract to Infrasource Paving and Concrete Services, and contracted with Parsons Brinkerhoff Shuh & Jernigan ("PBSJ") to provide construction, engineering, and inspection services for the Project. Under the PBSJ contracts, the firm "shall be responsible for construction inspection," and "[i]t shall be the responsibility of [PBSJ] to provide services to ensure that the project is constructed by [Infrasource] in reasonably close conformity

with the plans, specifications[,] and other contract provisions." DOT employee Darrell Williams monitored construction progress, attended meetings on behalf of the DOT, and served as a liaison between the DOT and PBSJ.

Active construction ended in October 2007, and a final inspection was performed in January 2008. On a rainy night in March 2008, Cameron Bridges approached the intersection in Stephanie's car with her as his passenger. The complaint alleges that Bridges was heading south on Peachtree Road, and, intending to turn left onto Piedmont Road, Bridges entered what he believed to be the left-hand turn lane. Instead, the vehicle entered a short left-hand turn lane immediately preceding the Piedmont intersection so that drivers could turn left into a parking lot at the northeast corner of Peachtree and Piedmont. This shorter turn lane was bounded by a concrete divider, which allegedly caused the vehicle to roll when Bridges mistakenly drove into it.

Stephanie died of injuries she suffered in the crash, and the Kovalciks filed suit against the DOT, the City, BCID, URS, PBSJ, and others. The Kovalciks' complaint includes negligence claims against the DOT for allegedly failing to ensure the roadway was safe for use by the public, failing to provide adequate signage or warning of the traffic barriers, and negligently designing the roadway. The DOT

4

answered, asserting sovereign immunity, and following discovery, the DOT moved to dismiss on sovereign immunity grounds. The trial court, in a one sentence order, denied the motion, giving rise to this appeal.

1. (a) *Inspection function under OCGA § 50-21-24 (8)*. The DOT argues that the trial court erred by permitting the Kovalciks' negligent design claim to go forward because of the inspection function exception to liability under the Georgia Tort Claim Act ("GTCA"). We disagree.

Ordinarily, pursuant to the Georgia Constitution of 1983, the State is immune from suit under the sovereign immunity doctrine: "sovereign immunity extends to the [S]tate and all of its departments and agencies. The sovereign immunity of the [S]tate and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[5] "As a general rule, the sovereign immunity of the State and its departments is waived by the [GTCA] for 'the torts of [S]tate officers and employees acting within the scope of their official duties or employment,'" subject

---

[5] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

to certain exceptions.[6] As a department of the State, the DOT is subject to the waiver and the exceptions set forth in the GTCA.[7]

One exception is codified at OCGA § 50-21-24 (8), which provides as follows:

The [S]tate shall have no liability for losses resulting from: . . . [i]nspection powers or functions, including . . . making an inadequate or negligent inspection of any property *other than property owned by the [S]tate* to determine whether the property complies with or violates any law, regulation, code, or ordinance *or contains a hazard to health or safety*.[8]

Here, the DOT argues that it did not draft the construction plans, and it is immune from any liability stemming from its inspection of the plans prepared by URS. The DOT does not dispute, however, that Peachtree Road, a State route, is a roadway owned by the State; instead, it argues that the plans themselves were not "property owned by the State," so it was immune for any liability arising from its inspection of the plans.

---

[6] (Citation and punctuation omitted.) *Ga. Dept. of Human Svcs. v. Spruill*, 294 Ga. 100 (751 SE2d 315) (2013).

[7] See *Bruton v. Ga. Dept. of Human Resources*, 235 Ga. App. 291, 293 (509 SE2d 363) (1998).

[8] (Emphasis supplied.)

The Kovakciks point to evidence that the DOT participated in the inspection of the construction site itself to determine compliance with the plans, DOT guidelines, and completion of construction. Thus, they argue that the DOT's inspection was not merely of the plans, but also of the newly configured roadway itself. In light of the emphasized language above (from OCGA § 50-21-24 (8)), we agree that immunity is waived to the extent that the DOT's role included inspection of the State roadway and intersection itself to detect hazards or to determine compliance with laws, regulations, codes, or ordinances. This case is the converse of *Magueur v. Dept. of Transp.*,[9] in which this Court addressed the DOT's immunity from a complaint alleging that the DOT violated a duty to notify a county that a county roadway, as designed and constructed by the county and approved by the DOT, contained safety hazards. The Court ruled that, even assuming the DOT had such a duty, it was immune because the duty involved an inspection power or function of property not owned by the State. In so holding, the Court explained, "we see no principled distinction between an inspection of physical property to determine whether it complies with accepted safety standards and an inspection of construction

_____

[9] 248 Ga. App. 575 (547 SE2d 304) (2001).

7

plans to determine whether the property, once constructed, will comply with such standards."[10]

In the present case, we likewise find no meaningful distinction arising from the DOT's argument that it only inspected the construction plans, which it did not own. There is evidence that the DOT's role included both approving construction plans and inspecting the physical property for compliance with DOT standards as built in accordance with those plans. Accordingly, because it is undisputed that the roadway inspected by the DOT is owned by the State, the inspection powers exception to State liability in OCGA § 50-21-24 (8) does not, by its own terms, apply to the DOT's inspection of that roadway.[11] This holding is limited to the immunity defense before

---

[10] Id. at 577. See also *Comanche Constr., Inc. v. Dept. of Transp.*, 272 Ga. App. 766, 768 (2) (613 SE2d 158) (2005) ("The phrase 'inspection powers or functions' includes both an inspection of physical property to determine whether it complies with accepted safety standards, as well as a review of construction plans for such compliance.") (physical precedent only).

[11] Cases to the contrary cited by the DOT all involve property not owned by the State. See, e.g., *Comanche Constr.*, 272 Ga. App. at 768-770 (physical precedent only; county owned); *Magueur*, 248 Ga. App. at 575 (county owned). Compare *Welch v. Ga. Dept. of Transp.*, 283 Ga. App. 903 (1) (642 SE2d 913) (2007) (to prevail on a tort claim based on the DOT's failure to inspect for hazardous vegetation, plaintiffs "must show that the vegetation [on private property] extended into DOT's right-of-way").

us, and we do not reach any further questions as to the DOT's actual role in this case or as to the DOT's duty under the circumstances.

(b) *Licensing powers exception under OCGA § 50-21-24 (9)*. The DOT also argues that, to the extent that the Kovalciks' claim is based on negligent approval of defective construction plans or failure to deny approval of defective construction plans, such a claim is barred by the licensing powers exception to liability under the GTCA. The Kovalciks point out that the DOT did not raise this argument in the trial court and argue that we should therefore not consider it. But "[s]overeign immunity of a [S]tate agency is not an affirmative defense, going to the merits of the case; [instead it] raises the issue of the trial court's subject matter jurisdiction to try the case."[12]

> [L]ong-standing statutory and case law requir[es] courts to dismiss an action "whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter." The court's lack of subject-matter jurisdiction cannot be waived and may be raised at any

---

[12] *Dupree*, 256 Ga. App. at 671 (1). See also *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 265 (2) (644 SE2d 290) (2007) ("any suit brought to which [a GTCA] exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b)(1) for lack of subject matter jurisdiction.").

9

time either in the trial court, in a collateral attack on a judgment, or in an appeal.[13]

In certain limited circumstances, there may be some equitable arguments precluding such a defense,[14] but such is not the case here because the DOT asserted its immunity in its complaint and in its dismissal motion. Therefore, we will address the DOT's argument here.

The DOT argues that to the extent the Kovalciks' theory of liability stems from its allegedly negligent approval of URS's design plans, the DOT's decisions during the approval process of the plans qualify for the licensing powers exception under OCGA § 50-21-24 (9), which provides as follows: "The [S]tate shall have no liability for losses resulting from: . . . [l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization." The DOT relies on cases where the DOT authorized a county's

---

[13] (Punctuation omitted.) *Abushmais v. Erby*, 282 Ga. 619, 622 (3) (652 SE2d 549) (2007), citing OCGA § 9-11-12 (h) (3).

[14] See id. at 622-623 (3).

10

request to install a traffic light,[15] the DOT granted a permit to build a commercial driveway,[16] and the DOT approved construction of a decorative wall on top of an existing retaining wall at an intersection on a [S]tate route.[17] In each of these cases, this Court held that the DOT was immune under the licensing powers exception of the GTCA. We find these cases persuasive under the facts here. Therefore, to the extent that any of the Kovalciks' claims are predicated on the DOT's improper authorization of the plans or Project, the DOT is immune.[18]

2. The DOT also argues that the trial court erred by failing to dismiss the negligent inspection claim because under the GTCA, the DOT is not liable for the torts of independent contractors. The DOT points to its contract with PBSJ in which PBSJ agreed to provide "construction inspection, field materials sampling and testing, and assisting [DOT] engineers with contract administration. . . [and] services to ensure that the project is constructed by the contractor in reasonably close conformity

---

[15] See *Murray*, 284 Ga. App. at 265 (1) (physical precedent only).

[16] See *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 224 (540 SE2d 218) (2000).

[17] See *Dept. of Transp. v. Bishop*, 216 Ga. App. 57 (453 SE2d 478) (1994).

[18] The holdings herein are not inconsistent. "[S]imply because [DOT] may have waived immunity on [one] claim does not mean that it waived immunity on another claim." *Diamond v. DOT*, 326 Ga. App. 189, 191 (1) (756 SE2d 277) (2014).

11

with the plans, specifications, and other contract provisions." The DOT is correct that under OCGA § 50-21-22 (7), which defines "State officer or employee" for purposes of the GTCA, State actors do not "include an independent contractor doing business with the [State.]" Thus, the GTCA's waiver of immunity does not extend to the acts of independent contractors, including PBSJ in this case.[19]

Nevertheless, the DOT's contract with PBSJ did not take the DOT entirely out of the equation with respect to the Project. The Kovalciks' complaint alleges several acts by the DOT that they contend were wrongful. For example, there is evidence that DOT employees inspected the Project site itself and made recommendations for changes based on perceived errors or flaws. Thus, the mere presence of contractors performing services on behalf of the DOT does not relieve the DOT from potential liability for its own actions. Accordingly, this argument presents no basis for reversal.

*Judgment affirmed in part; reversed in part. Miller and Dillard, JJ., concur.*

---

[19] See *Johnson v. Ga. Dept. of Human Resources*, 278 Ga. 714, 717 (2) (606 SE2d 270) (2004) ("The Georgia General Assembly has spoken by removing from the pool of State employees covered by the [GTCA] independent contractors. . . .")