**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 25, 2015**

# In the Court of Appeals of Georgia

A15A0346. GEORGIA DEPARTMENT OF TRANSPORTATION
 v. WYCHE.

MCMILLIAN, Judge.

Defendant Georgia Department of Transportation ("DOT") appeals the trial court's order denying its motion to dismiss the complaint of Plaintiff Mary Wyche, individually and as surviving mother of Larry J. Bowen, Jr., deceased. Because we find that Wyche's claims against the DOT are barred by the doctrine of sovereign immunity for the reasons that follow, we reverse.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them."[1] (Citation and punctuation omitted.) *Bd. of*

---

[1] "A motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, and as a result, a trial court is entitled to

*Regents of the Univ. System of Ga. v. Canas*, 295 Ga. App. 505, 509 (3) (672 SE2d 471) (2009).

So viewed, the record shows that Bowen was killed on the night of May 4, 2005 while employed as a construction worker by Reeves Construction Company. ("Reeves"). Reeves was performing paving work on Eisenhower Parkway in Macon, Georgia pursuant to a contract with the DOT for Project No. STP-3201(9). At approximately 11:20 p.m., Bowen was standing in the area of the intersection of Eisenhower Parkway and Log Cabin Drive[2] when he was struck by a vehicle traveling south on Log Cabin Drive. He was then struck and dragged through the intersection by a second vehicle also traveling southbound on Log Cabin Drive. Tragically, he died at the scene. The drivers later deposed that they were proceeding through a green light at the intersection, which was "very dark," and that they did not see any signs indicating construction work was underway at the intersection. That evening, the only DOT employee present was Johnny Moss, a field materials inspector, who had just

---

make factual findings necessary to resolve the jurisdictional issue." *Bd. of Regents of the Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 16, n. 2 (749 SE2d 23) (2013).

[2] That evening, a member of the Reeves paving crew had instructed Bowen to be in that area to observe the intersection's traffic signal and direct the equipment operators, also employed by Reeves, as to when they had the right-of-way to cross the intersection.

2

arrived to perform asphalt testing and was still stopped at the traffic light at the time of the accident. Also at the scene was Cedric Howard, an employee of Moreland Altobelli Associates, Inc. ("Moreland"), which was under contract with the DOT to perform inspections[3] and ensure that Reeves was in compliance with the DOT contract in all respects, including safety requirements.[4]

On May 2, 2007, Wyche filed a complaint against the DOT and Moreland,[5] asserting claims of ordinary and professional negligence against both defendants, alleging that their lack of inspection and planning left drivers "without positive guidance, conspicuous, and unambiguous road signage and appropriate lighting." With respect to the DOT, Wyche alleged that the DOT failed to inspect and enforce its contract with Moreland when it did not provide appropriate signage and lighting

---

[3] Howard testified that DOT employee Moss had no authority to give him job directions.

[4] The contract entered into by the DOT and Moreland provides, in part, that Moreland "shall utilize effective control procedures to determine and to ensure that the contractor's construction of this project is performed in reasonably close conformity with the plans, specifications, and contract provisions." The contract specifically required Moreland to "inspect traffic control and monitor traffic operations during the normal course of other inspection duties."

[5] Both drivers were also named in the complaint, but were eventually dismissed with prejudice.

at the intersection and failed to oversee and train "its employees and agents as to appropriate inspection procedures." The DOT was subsequently granted leave to file a third-party complaint against Reeves for indemnification under their contract.

In its third-party complaint, the DOT cites Section 150 of the contract's Special Provisions, which "as supplemented by the Plans, Specifications, and Manual on Uniform Traffic Control Devices (MUTCD)," constitutes the project's "Traffic Control Plan." The DOT also cites sub-section 150.01 of the contract, which provides that Reeves is responsible for "'furnishing, installing, maintaining, and removing necessary traffic signs, barricades, lights, signals, cones, pavement markings and other traffic control devices and shall include flagging and other means for guidance and protection of vehicular and pedestrian traffic through the Work Zone.'"[6]

---

[6] The contract further provides that

[Reeves] shall designate a qualified individual as a Worksite Traffic Control Supervisor (WTCS) who shall be responsible for selecting, installing and maintaining all traffic control devices in accordance with the Plans, Specifications and the MUTCD. . . . As the representative of [Reeves], the WTCS shall have full authority to act on behalf of [Reeves] in administering the Traffic Control Plan. . . . The WTCS shall regularly perform inspections to ensure that traffic control is maintained.

4

On March 7, 2014, the DOT filed a motion to dismiss on the grounds of sovereign immunity. Following a hearing, the trial court denied the motion, and this appeal followed.

1. In its first enumeration of error, the DOT asserts that the trial court erred in finding a waiver of sovereign immunity for the negligent acts committed by Reeves and Moreland, as independent contractors.[7] The Georgia Constitution provides that sovereign immunity extends to the State and all of its departments and agencies. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). This sovereign immunity can only be waived by a constitutional provision or an Act of the General Assembly that specifically provides for such waiver. Id. The Georgia Tort Claims Act ("GTCA") is one such Act and provides for a limited waiver of sovereign immunity for the torts

---

[7] Although Wyche objects to this enumeration of error because the trial court did not specifically address this issue in its order , "[l]ong-standing statutory and case law requires courts to dismiss an action whenever it appears by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter. The court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal." (Citations and punctuation omitted.) *Ga. Dept. of Transp. v. Kovalcik*, 328 Ga. App. 185, 190 (1) (b) (761 SE2d 584) (2014). And we have consistently held that the sovereign immunity of a State agency "raises the issue of the trial court's subject matter jurisdiction to try the case." Id. Moreover, the DOT raised this issue in its answer and its motion to dismiss, so we will address the DOT's argument here. See id. (finding no equitable argument to preclude review of additional argument on appeal where sovereign immunity generally was raised below).

of State employees while acting within the scope of their employment.[8] See OCGA § 50-21-20 et seq.; *Johnson v. Ga. Dept. of Human Resources*, 278 Ga. 714, 715 (1) (606 SE2d 270) (2004).

In determining whether there has been a waiver of sovereign immunity, we must keep in mind that, "in acting for the public good and in responding to public need, state government must provide a broad range of services and perform a broad range of functions throughout the entire state, regardless of how much exposure to liability may be involved." (Citations omitted.) *Bd. of Regents of the Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 17 (1) (749 SE2d 23) (2013). For this reason, our legislature determined that "the exposure of the state treasury to tort liability must therefore be limited, and that state government should not have the duty to do everything that might be done." (Citation omitted.) Id. And, "the doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed." (Citation and punctuation omitted.) Id. Moreover, "the party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver." Id. at 16.

---

[8] As a department of the State, the DOT is subject to the waiver, and exceptions thereto, set forth in the GTCA. See *Kovalcik*, 328 Ga. App. at 188 (1) (a).

Wyche asserts that because the DOT has a nondelegable duty to maintain traffic safety in construction zones on state highways, the DOT can be held liable for the actions of contractors like Reeves and Moreland, which should be considered "employees" under the GTCA. This question has been answered unequivocally under state law. Although the DOT is tasked with the duty to "plan, designate, improve, manage, control, construct and maintain a state highway system"[9] under the Georgia Code of Public Transportation, OCGA § 32-1-1 et seq., nothing in that Code prohibits the DOT from delegating its responsibilities to a private contractor. See *Johnson*, 278 Ga. at 716 (2) (state departments "have meaningful statutory responsibilities . . . and they satisfy those responsibilities by exercising reasonable care in the selection and supervision of their independent contractors"); *Comanche Constr., Inc. of Georgia v. Dept. of Transp.*, 272 Ga. App. 766, 770 (2) (613 SE2d 158) (2005) (physical precedent only) (finding no language in the statute that would prohibit the DOT from delegating its responsibility to a private contractor through a construction contract). Here, the DOT delegated its responsibilities with respect to Project No. STP-3201(9) to Reeves and Moreland under their respective contracts, including the responsibility for traffic control and inspections for contract compliance. And the DOT is correct

_____

[9] OCGA § 32-2-2 (a) (1).

7

that corporations and independent contractors doing business with the State are not included within the GTCA's definition of "employee." See OCGA § 50-21-22 (7); *Brooks*, 324 Ga. App. at 17-18 (1) (the State is immune from liability if the tort was committed by a third party). Thus, under the GTCA, the DOT's sovereign immunity has not been waived for the negligence committed by independent contractors such as Reeves or Moreland.[10] Id.

Wyche now argues for the first time on appeal that the DOT was not permitted to delegate its duties to Reeves or Moreland because the State's project was partially funded by federal highway funds, and pursuant to 23 CFR § 635.105 (a), the DOT was required to maintain full authority over the construction project. However, "[a]s she raises [this] question for the first time of appeal, she presents nothing for us to consider." *Kumar v. Hall*, 262 Ga. 639, 644 (3) (423 SE2d 653) (1992). We also note that this Court rejected a similar argument in *Comanche*, and although it is physical precedent only, we find it persuasive. 272 Ga. App. at 771 (2). The plaintiff in *Comanche* also argued that federal regulations placed sole responsibility for traffic control plans on the DOT, but this Court found that nothing in those regulations

_____

[10] We express no opinion here as to any potential liability of either Reeves or Moreland.

necessarily rendered DOT ultimately liable for design decisions related to traffic control plans. Id. ("23 CFR § 630.1010 (a) (4) (2004) specifically allows a state highway agency to permit a contractor to develop and use its own traffic control plan in a roadway project."). And while the State is required to designate a person who will have "'the primary responsibility and sufficient authority for assuring that the [plan is] effectively administered,'" there is "no reason why this requirement necessarily elevates DOT's involvement to something more than inspection and approval." Id. (quoting 23 CFR § 630.1010 (b) (2004)). See *Ga. Dept. of Corrections v. James*, 312 Ga. App. 190, 194 (1) (718 SE2d 55) (2011) ("Implied waivers of governmental immunity should not be favored. Thus, even if, pursuant to the cited statutory provisions, [the third parties] are subject to the DOC's rules and supervision, those statutory provisions did not authorize the trial court's ultimate conclusion that sovereign immunity was waived.") (citations and punctuation omitted).

Accordingly, Wyche's claims against the DOT for negligence relating to the paving operations on the night of the accident, including the alleged failure to provide appropriate signage and lighting at the intersection, are actually claims based on the actions of one or more independent contractors and are barred by the doctrine of sovereign immunity. See *Dept. of Transp. v. Jarvie*, 329 Ga. App. 681, 683 (766

9

SE2d 94) (2014) ("GTCA's waiver of immunity does not include torts committed by independent contractors, so the DOT is not subject to suit for the conduct of its contractors, such as negligently designing the . . . area's traffic plan or negligently driving the truck which caused [decedent's] death.") (citations omitted); *Dept. of Transp. v. Owens*, 330 Ga. App. 123, 133-135 (4) (766 SE2d 569) (2014) (under the GTCA, independent contractor doing business with the State is not a state officer or employee and the DOT is not be liable for traffic control plans implemented by an independent contractor).

2. With respect to Wyche's claims based on the DOT's own actions, essentially that it failed to inspect and ensure a proper traffic control plan, the DOT contends that the trial court erred in finding that the exceptions to the State's waiver of sovereign immunity with respect to its inspection powers or functions (OCGA § 50-21-24 (8)) or its licensing powers or functions (OCGA § 50-21-24 (9)) are inapplicable here. We will address each statutory exception in turn.

(a) To the extent the GTCA sets forth an exception to the waiver of sovereign immunity, the State and its departments remain immune from suit. See OCGA § 50-21-24 (setting forth 13 limitations to the State's waiver of sovereign immunity). One

such exception relates to the State's inspection powers. OCGA § 50-21-24 (8) provides:

> [t]he state shall have no liability for losses resulting from . . . [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.

And we have held that there is no principled distinction between the DOT's inspection of physical property to determine whether it complies with accepted safety standards and an inspection of construction plans. See, e.g., *Magueur v. Dept. of Transp.*, 248 Ga. App. 575, 578 (547 SE2d 304) (2001) ("Because the duty allegedly breached by DOT – i.e., a duty to inspect the construction plans and/or the property and to advise the county of any safety hazards – falls within OCGA § 50-21-24 (8), DOT is entitled to sovereign immunity.").

Here, Wyche's claims that the DOT was negligent in "approving construction plans and inspecting the physical property" clearly fall within this inspection exception. In asserting that the exception is inapplicable here, Wyche argues, and the trial court agreed, that because the accident occurred on a State-owned highway, the

11

DOT is not immune from suit. The trial court, relying on *Ga. Dept. of Transp. v. Kovalcik*, 328 Ga. App. 185 (761 SE2d 584) (2014), which involved an accident on a State-owned highway after the construction was completed, concluded that the holding should also apply to this case involving an active construction project.

However, shortly after the trial court entered its order, this Court clarified the scope of this exception. In *Jarvie*, we held that the DOT was immune from liability under the inspection powers exception with respect to monitoring compliance with the DOT's conditions (including the submission of a traffic control plan) for approval of a contractor's request to stockpile rock in the median as part of a road-widening project on the interstate. 329 Ga. App. at 684. We found that the factual scenario presented was distinct from that in *Kovalcik*, "which involved inspecting a completed state roadway project with an allegedly hazardously designed curb and left turn lane[,]" whereas in *Jarvie* "the DOT's relevant on-site conduct was monitoring the method of construction as previously approved." Id. at 684, n. 14. And we rejected the plaintiffs' argument that the DOT's actions amounted to inspection of State property and should not be covered by the inspection powers exception, explaining:

> the conduct in this case amounts to oversight of construction activities
> for purposes of administering the contract, and it does not amount to an

12

inspection of State property for regulatory compliance or safety hazards as contemplated by the language of OCGA § 50-21-24 (8). Absent a clear legislative directive, we decline to extend the waiver of sovereign immunity to include independent contractors' conduct even if the State actor in some way attempts to ensure that contractors are operating safely on a State-approved project.

(Footnote omitted.) Id. at 684.

So too here, to the extent that Wyche contends that the DOT was negligent in failing to adequately inspect the work performed by Reeves during the course of the paving project, her claims fall under the inspection powers exception, and the DOT is immune from those claims. See *Jarvie*, 329 Ga. App. at 684.

(b) In its order, without otherwise characterizing her claims, the trial court also concluded that Wyche "does not contend [the] DOT was negligent in any way as to its licensing power or function." We disagree.

OCGA § 50-21-24 (9) provides that the State shall have no liability for losses resulting from its "[l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization." In *Owens*, C. W. Matthews Contracting Company contracted with the

13

DOT to perform repaving work on portions of I-75/85 in Atlanta. 330 Ga. App. at 124. In the early morning hours of May 16, 2010, while it was still very dark, a dump truck driver was delivering a load of asphalt to the construction site. Id. The driver was traveling approximately 15-25 miles per hour in the second lane over from the right shoulder, which lane was supposed to have been, and which he mistakenly believed had been, closed to normal traffic. Id. at 124-125. Owens, who was driving his Jeep in the second lane at 70 miles per hour at the time, struck the dump truck from behind and was killed. Id. at 125. This Court found that OCGA § 50-21-24 (9) shielded the DOT from liability for alleged negligence in approving a site-specific traffic control plan that was in effect on the date of the collision, explaining that "this exception, by its plain terms, is not strictly limited to decisions related to permits or licenses. Instead, it also applies as to decisions relating to issuance, denial, suspension, or revocation of *approvals*." (Emphasis in original.) Id. at 137 (4) (b).

Here, Reeves was performing paving work following the DOT's authorization granted in the Notice to Proceed issued on April 22, 2003. The DOT's review and approval of traffic control plans that were supposed to be submitted by Reeves[11] and

_____

[11] Wyche contends that Reeves failed to submit a traffic control plan as required by the DOT contract. But whether the DOT failed to revoke approval of its authorization after Reeves failed to submit a traffic control plan or Reeves submitted

14

its alleged failure to suspend or revoke its approval thus fall within the licensing power exception.[12] See *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 266 (2) (644 SE2d 290) (2007) (physical precedent only) ("the [licensing powers] exception grants broad immunity for losses resulting from virtually any action the State DOT could take regarding the authorization" to install a traffic light); *Ga. Dept. of Transp. v. Cox*, 246 Ga. App. 221, 225 (540 SE2d 218) (2000) (DOT immune as to claims arising out of the State's issuance of the construction permit and the State's alleged refusal to timely issue a permit for a traffic signal).

Accordingly, whether Wyche's claims are characterized as either claims that the DOT negligently approved Reeves' paving project or negligently inspected the project, they are barred under the doctrine of sovereign immunity. See *Reidling v. City of Gainsville*, 280 Ga. App. 698, 703 (1) (634 SE2d 862) (2006) (pursuant to

---

a problematic plan makes no difference in analyzing whether the licensing power exception applies.

[12] We are unpersuaded by Wyche's attempt to characterize her claim as one that falls outside the licensing powers exception because she does not fault the DOT's original "decision to make or not to make the improvements to the subject intersection." Rather, she claims that the DOT "was negligent in failing to enforce the terms of the . . . contract," including the portions related to traffic control. Thus, she is essentially arguing that the DOT should have revoked its authorization for Reeves to proceed, which claim falls within the licensing power exception. See *Owens*, 330 Ga. App. at 137 (4) (b).

OCGA § 50-21-24 (8) and (9), "sovereign immunity precludes plaintiffs' claims that the DOT either negligently approved the disposal site for the excess fill soil or negligently inspected the site"). The trial court's denial of the DOT's motion to dismiss must be reversed.

*Judgment reversed. Barnes, P. J., and Ray, J., concur.*