**FOURTH DIVISION
DOYLE, P. J.,
COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 1, 2019**

# In the Court of Appeals of Georgia

A19A1175. LEEPER et al. v. SAFEBUILT GEORGIA, INC.          DO-042

DOYLE, Presiding Judge.

Jeffrey and Ashley Leeper filed suit in Fulton County Superior Court against Safebuilt Georgia, Inc., and other defendants, asserting various claims arising out of the construction of a home. The Leepers subsequently voluntarily dismissed the Fulton County action and refiled the case in Gwinnett County Superior Court. After filing an untimely answer, Safebuilt filed a motion to extend the time to answer and/or to open default, and the trial court granted the motion on both grounds and certified its order for immediate review. The Leepers challenge the trial court's order in this interlocutory appeal. For the reasons that follow, we reverse.

The record shows that in December 2017, the Leepers filed suit in Fulton County Superior Court against Safebuilt (as indemnitor for the City of Milton) and

several other defendants asserting claims including breach of contract and fiduciary duty, negligence, fraud, breach of warranties, and punitive damages arising out of the construction of a home in Milton. The Leepers alleged that Safebuilt (1) provided inspection services throughout the construction process pursuant to an agreement with the City of Milton, and (2) failed to identify various defects and code violations during its inspections. Later that same month, the Leepers voluntarily dismissed the Fulton County action without prejudice.

On December 26, 2017, the Leepers refiled the case in Gwinnett County Superior Court; they served Safebuilt's agent with a copy of the summons and complaint on December 28, 2017. Nevertheless, in February 2018, the Leepers and Safebuilt, through counsel, filed a stipulation in the Fulton County action extending the deadline for Safebuilt to file an answer. On February 13, 2018, Safebuilt filed an answer in Fulton County, and it responded to the Leepers's discovery requests in that case the same month.

On May 21, 2018, the Leepers filed a motion for default judgment against Safebuilt in the Gwinnett County case. The following day, Safebuilt filed an answer. On June 8, 2018, Safebuilt filed in the Gwinnett County action an "emergency motion" to extend the time to answer or open default. Safebuilt asserted that (a) it

2

never received notice of the dismissal of the Fulton County action, (b) it first learned of the Gwinnett County action in May 2018,[1] and (c) due to a misunderstanding and mistake on the part of both Safebuilt and the Leepers, all of Safebuilt's prior filings had been submitted in the Fulton County action. Safebuilt further contended that if the court determined that it was in default, opening default was warranted because, in relevant part, it is entitled to sovereign immunity.

The trial court granted Safebuilt's motion to open default on the ground of excusable neglect and, alternatively, also granted the motion for an extension of time to file its answer for the same reason. The court observed in the order that the Leepers lacked "clean hands" given their superior knowledge of the dismissal of the Fulton County action. The trial court subsequently certified its order for immediate review, and this appeal followed.

1. *Motion to open default*. The Leepers argue that the trial court erred by granting Safebuilt's emergency motion to open default. We agree.

---

[1] Counsel for Safebuilt averred in an affidavit that: "I believed that the Fulton County [c]ase was the only case pending against Safebuilt until May 18, 2018. While I may have received documents with a Gwinnett County style, I thought the style was an error. . . . Plaintiffs' counsel and Safebuilt's counsel were in the midst of resolving a discovery dispute in May 2018 when Safebuilt's counsel was made aware of the Gwinnett County [c]ase."

Unless otherwise provided by statute, a defendant in a civil case must file an answer within 30 days of service of the summons and complaint upon the defendant.[2] If an answer is not filed within the time required by the Civil Practice Act, "the case shall *automatically* become in default unless the time for filing the answer has been extended as provided by law."[3]

Under OCGA § 9-11-55 (b), a prejudgment default may be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. Generally, the opening of a default rests within the sound discretion of the trial court. However, compliance with the four conditions is a condition precedent; in its absence, the trial judge has no discretion to open default.[4]

Thus, the failure to set up a meritorious defense

is, in and of itself, fatal to the motion to open default, such that no other condition need be considered. In order to establish a meritorious

---

[2] See OCGA § 9-11-12 (a).

[3] (Emphasis supplied.) OCGA § 9-11-55 (a).

[4] (Punctuation and emphasis omitted.) *Sprewell v. Thompson & Hutson, South Carolina LLC*, 260 Ga. App. 312, 313 (1) (581 SE2d 322) (2003).

defense, a defendant must demonstrate that the outcome of the case "may be different" if the motion is granted. But, in making that showing, a defendant cannot rely on mere conclusions; he must set forth facts that establish the essential elements of a meritorious defense.[5]

In this case, the trial court erred by concluding that Safebuilt pleaded under oath a meritorious defense.[6]

(a) *Sovereign immunity*. The primary defense Safebuilt asserted is sovereign immunity based on its argument that the Leepers's claims are premised on work that Safebuilt did on behalf of the City of Milton. "The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit."[7]

Here, Safebuilt was acting as an independent contractor working for the City of Milton when it undertook the inspections at issue in this case; the parties' inspection contract explicitly provides that Safebuilt "is engaged in an independent

---

[5] (Footnotes omitted.) *Butterworth v. Safelite Glass Corp.*, 287 Ga. App. 848, 850 (1) (652 SE2d 877) (2007).

[6] The trial court did not elaborate on this ruling nor specify the meritorious defense.

[7] (Punctuation omitted.) *Watts v. City of Dillard*, 294 Ga. App. 861, 862 (1) (670 SE2d 442) (2008).

business and agrees to perform the services as an independent contractor and not as the agent or employee of the City."

The Georgia Tort Claims Act ("GTCA") indicates that sovereign immunity applies only to the State and to "State officers and employees" engaged in "the performance or nonperformance of their official duties or functions."[8] And OCGA § 50-21-22 (7) specifically excludes "an independent contractor doing business with the [S]tate" from the definition of "[S]tate officer or employee" for purposes of the GTCA. And this Court has held that "corporations and independent contractors doing business with the State are not included within the GTCA's definition of 'employee.'"[9]

Safebuilt has not identified any binding precedent indicating that a company acting as an independent contractor for a government entity may be entitled to sovereign immunity in Georgia. The sole case on which Safebuilt relies to support its claim in this respect — *Yearsley v. W. A. Ross Constr. Co.*[10] — is inapposite. *Yearsley* concerned a federal contractor conducting work on the Missouri River for the purpose

---

[8] OCGA § 50-21-21 (b).

[9] *Ga. Dept. of Transp. v. Wyche*, 332 Ga. App. 596, 600 (1) (774 SE2d 169) (2015).

[10] 309 U. S. 18 (60 SCt 413, 84 LE 554) (1940).

6

of improving navigation on the river "under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States."[11] The plaintiff claimed that the contractor's work had caused part of the plaintiff's land to wash away, in violation of the plaintiff's Fifth Amendment rights.[12] The U. S. Supreme Court held that there could be no liability on the part of the contractor for executing the will of Congress in the conduct of a project that was within Congress's constitutional power.[13] Notably, the Court held that to the extent that the contractor's action constituted a taking of property requiring just compensation, the plaintiff's remedy was to seek such compensation from the federal government by filing suit in the Court of Claims.[14] On its face, the decision in *Yearsley* results primarily from the intersection of the U. S. Constitution's Takings Clause and the availability of a remedy for a federal taking. Nothing in *Yearsley* suggests that the Court in that case was ruling that all contractors doing any work for any level of government are entitled to sovereign immunity for causes of action arising out of such work, even in

---

[11] Id. at 19-20.

[12] See id. at 20.

[13] See id. at 20-21.

[14] See id. at 21-22.

7

the absence of a federal Takings Clause issue. And we decline to so extend the doctrine of sovereign immunity, particularly in light of clear statutory authority to the contrary.

(b) *Additional defenses*. Safebuilt purported to raise two additional meritorious defenses in support of its motion to open the default in the affidavit of its attorney: (1) that it "provided inspections properly"; and (2) that "[m]any of the asserted negligent construction claims are inapplicable to Safebuilt due to the nature of Safebuilt's business and services and lack of privity with Plaintiffs." However, the affidavit lacks any facts or citations to evidence to support these assertions.

> In order to establish a meritorious defense, a defendant must demonstrate that the outcome of the case may be different if the motion is granted. But, in making that showing, a defendant cannot rely on mere conclusions; he must set forth facts that establish the essential elements of a meritorious defense. We recognize that the affidavit offered in support of the motion to open default need not contain in great detail the factual basis of the proposed defense. *In [this] case . . . , however, [the attorney's] affidavit is completely devoid of facts and details that would provide a defense to the action. . . . [Safebuilt's attorney] provided no basis for the trial court to determine that a meritorious defense had been factually raised.*[15]

---

[15] (Footnotes and punctuation omitted; emphasis supplied.) *Butterworth*, 287 Ga. App. at 850 (1).

8

Thus, the allegations contained in the conclusory affidavit, unsupported by facts or evidence, "was insufficient to establish a meritorious defense."[16]

Because Safebuilt failed to establish a meritorious defense, the trial court erred by granting the motion to open the default.

2. *Motion to extend time to file an answer.* The trial court also erred by alternatively granting Safebuilt's motion to extend the time to file an answer.[17]

When an act is required to be done within a specified time under the Civil Practice Act ("the CPA"), a trial court "for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect."[18] But pretermitting whether Safebuilt demonstrated that its failure to timely file an answer

---

[16] Id.

[17] In their brief, the Leepers argue that "[t]he trial court erred in granting Safebuilt's Emergency Motion and by finding that 'a meritorious defense has been pleaded under oath' by Safebuilt and that Safebuilt's actions were 'excusable neglect.'" (emphasis omitted). We agree that the Leepers's brief lacks detailed specific argument regarding the trial court's grant of Safebuilt's motion to extend the time to answer. Nevertheless, given the wording of the enumeration and based on our reading of the Leepers's brief, we reject Safebuilt's contention that the Leepers failed to enumerate as error that ruling.

[18] OCGA § 9-11-6 (b). The Code section specifically exempts motions for new trial and motions for judgment notwithstanding the verdict.

9

constituted excusable neglect under OCGA § 9-11-6 (b), the trial court erred by granting Safebuilt's motion to extend the time to answer months after the case had gone into automatic default because, as we concluded in Division 1, Safebuilt failed to comply with the mandatory requirements of OCGA § 9-11-55 (b).

When interpreting statutes,

[w]e must seek to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. . . . [I]t is a basic rule of construction that a statute should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning.[19]

"And lastly, we must remember that a specific statute will prevail over a general statute, absent any indication of contrary legislative intent, to resolve any inconsistency between them.[20]

_____

[19] (Punctuation omitted.) *Lathan v. Hosp. Auth. of Charlton County*, 343 Ga. App. 123, 128-129 (1) (805 SE2d 450) (2017).

[20] (Citations and punctuation omitted.) *Schofill v. Phoebe Putney Health Sys., Inc.*, 315 Ga. App. 817, 819 (1) (728 SE2d 331) (2012).

Turning to the statutes at issue here, if an answer is not filed within the time required by the CPA, "the case shall automatically become in default unless the time for filing the answer has been extended as provided by law."[21] Pursuant to OCGA § 9-11-55 (b), a trial court has discretion to open a default before final judgment is entered if the defendant meets four specific conditions — "(1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense" — and demonstrates one of three grounds — "(1) providential cause, (2) excusable neglect, and (3) proper case."[22] OCGA § 9-11-6 (b), on the other hand, "is a general statute providing for extensions of time" in certain circumstances."[23] Thus, OCGA § 9-11-55 (b), a specific statute, prevails over OCGA § 9-11-6 (b), a general statute.[24] To permit a trial court to extend a defendant's

[21] OCGA § 9-11-55 (a). See also *Roberson v. Gnann*, 235 Ga. App. 112, 113-114 (2) (508 SE2d 480) (1998) ("In determining whether a valid extension has been granted, O.C.G.A. §§ 9-11-6 (b) and 9-11-55 (a) must be construed together.").

[22] *Sprewell*, 260 Ga. App. at 313 (1).

[23] *Schofill*, 315 Ga. App. at 820 (1).

[24] See id. at 819-820 (1) (holding that OCGA § 9-11-9.1 (b), a specific statute giving trial courts discretion to accept an untimely amended or supplemental expert affidavit in a professional negligence case "as it shall determine justice requires," prevails over OCGA § 9-11-6 (b), "a general statute").

time to file an answer after the case is in automatic default as an alternative to OCGA § 9-11-55 (b), absent compliance with that Code section, would constitute an improper end run around the default statute, rendering it meaningless.[25]

Thus, the trial court erred by granting Safebuilt's motion to extend time to file an answer.

*Judgment reversed. Markle, J., concurs. Coomer, J., concurs in Division 1 and dissents in Division 2. ***

**DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

---

[25] See *Barone v. McRae & Holloway*, 179 Ga. App. 812, 813-814 (1) (348 SE2d 320) (1986) (holding that the trial court's "refus[al] to grant, for the reason advanced, a judicial extension of the statutory time for filing the answer, in essence allowing a circumvention of the default status of the action" was not an abuse of discretion); *Mecca Constr., Inc. v. Maestro Investments, LLC*, 320 Ga. App. 34, 36-37 (1) (a) (739 SE2d 51) (2013) (physical precedent only) (concluding that the trial court did not abuse its discretion by denying an untimely request for an extension of the time to answer because granting an extension "'in essence [would have] allow[ed] a circumvention of the default status of the action'"), quoting *Barone*, 179 Ga. App. at 813-814 (1).

A19A1175. LEEPER v. SAFEBUILT GEORGIA, INC.                     CO-042


COOMER, Judge, concurring in part and dissenting in part.

While I concur in Division 1 of the majority opinion, I respectfully dissent to Division 2 because the majority's analysis of the intersection of OCGA § 9-11-6 (b) and OCGA § 9-11-55 (b) contravenes the intent of the General Assembly.

The majority concludes that "[t]o permit a trial court to extend the time to file an answer [under OCGA § 9-11-6 (b)] after the case is in automatic default pursuant to OCGA § 9-11-55 (a) without requiring compliance with OCGA § 9-11-55 (b) would constitute an improper end run around the default statute . . . ." Thus, in the majority's view, if a party fails to satisfy OCGA § 9-11-55 (b), it cannot avail itself

of OCGA § 9-11-6 (b). By manufacturing this new judicially created bright-line rule out of whole cloth – purportedly by finding a non-existent statutory conflict – the majority ignores legislative policy decisions that are unambiguously expressed in the plain text of the Civil Practice Act. In doing so, the majority invades the prerogative of the General Assembly, thereby exposing this institution to well-deserved criticism that is has exercised power beyond the limits imposed by this state's constitution. See *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers [an appellate court] does not have the authority to rewrite statutes. The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law." (citation and punctuation omitted)).

The majority's foray into legislating leaves by the wayside two fundamental principles that are at issue in this case. First, the Civil Practice Act was created to "enable the Court to do substantial justice rather than to decide cases upon technicalities[.]" *Mundt v. Olson*, 155 Ga. App. 145, 145 (270 SE2d 344) (1980) (citation omitted). It was "designed to simplify Georgia Civil Procedure by de-emphasizing form and technicality in order that the substantive rights of litigants may

2

be asserted and tried on the merits." *Ambler v. Archer*, 230 Ga. 281, 286 (1) (196 SE2d 858) (1973) (citation and punctuation omitted). Second, the General Assembly is presumed to be aware of both statutes at issue here – OCGA § 9-11-6 (b) and OCGA § 9-11-55 (a) – and how they may interact with one another. See *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010) ("The General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it." (citation omitted)).

OCGA § 9-11-6 (b) provides that when the Civil Practice Act requires an act to be done within a specified time and the time for doing that act has expired, the trial court may allow the act to be done beyond the statutory deadline when the failure to act resulted from excusable neglect. The General Assembly has placed two specific limits on a court's authority in this regard: "no extension of time shall be granted for the filing of motions for new trial or for judgment notwithstanding the verdict." OCGA § 9-11-6 (b). Notably absent from that short, specific list of exceptions is a motion to extend the time to answer either before or after default. See id.; *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (in statutory construction, the expression of one thing implies the exclusion of another).

3

Thus, read as a whole, the statutory framework indicates that the legislature, in its policy-making role – which is preserved to it alone by the doctrine of separation of powers delineated in our state's constitution and statutes, see *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) – made a plain statement of the power it reserved to trial courts to grant relief to parties who may have failed to meet a deadline established elsewhere in the Civil Practice Act. See e.g., *Porter Coatings v. Stein Steel & Supply Co.*, 247 Ga. 631, 631 (278 SE2d 377) (1981) (observing that OCGA § 9-11-6 (b) (then codified at Code Ann. § 81A-106 (b)) authorized a trial judge to extend filing times, notwithstanding the apparently "rigid" deadlines for summary judgment filings under OCGA § 9-11-56 (c) (then codified at Code Ann. § 81A-156 (c))); accord *Eagle West, LLC v. Ga. Dept. of Transp.*, 312 Ga. App. 882, 888 (720 SE2d 317) (2011) ("[P]articular words of statutes are not interpreted in isolation; instead, courts must construe a statute to give sensible and intelligent effect to all of its provisions, and must consider the statute in relation to other statutes of which it is part." (footnote omitted)); see also *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (in construing statutes, "we must presume that the General Assembly meant what it said and said what it meant" (citation and punctuation omitted)). And in particular, this framework reflects the

4

General Assembly's intent to give trial judges discretion to grant relief under OCGA § 9-11-6 (b) where a movant may not satisfy the requirements of OCGA § 9-11-55 (b), but the harsh result of a default judgment would be unjust under the circumstances. In that regard, the goal of elevating justice over technicality is made more attainable by the legislature's policy decision to give trial courts broad discretion to reach results that promote justice, even when a party has failed to adhere to the technical strictures of selected Civil Practice Act provisions read in isolation. See *Ambler*, 230 Ga. at 286 (1); *Eagle West, LLC*, 312 Ga. App. at 888; *Mundt*, 155 Ga. App. at 145. The majority opinion runs roughshod over that policy by substantially limiting the discretion of trial courts in a way that is contrary to the statutory framework and purpose of the Civil Practice Act.

A closer examination of the authority relied on by the majority highlights the extent to which the majority stretches this Court's constitutional authority beyond its limits. In support of its conclusion that the trial court's application of OCGA § 9-11-6 (b) improperly constitutes an end run around the default statute, the majority cites *Mecca Constr., Inc. v. Maestro Investments, LLC*, 320 Ga. App. 34 (739 SE2d 51) (2013) (physical precedent only), and *Barone v. McRae & Holloway, P.C.*, 179 Ga. App. 812 (348 SE2d 320) (1986). Neither decision, however, reaches so far. Rather,

5

in each case, this Court held that the trial court did *not* abuse its discretion in *refusing* to grant an extension of time under OCGA § 9-11-6 (b) after each defendant was in default, because neither defendant had established excusable neglect, as required by OCGA § 9-11-6 (b). *Mecca Constr., Inc.*, 320 Ga. App. at 36-37 (1) (a); *Barone*, 179 Ga. App. at 813-814 (1). In those cases, we also briefly observed – without elaboration – that our determination that the trial court had not abused its discretion was further supported by the proposition that granting an extension "'in essence [would allow] a circumvention of the default status of the action.'" *Mecca Constr., Inc.*, 320 Ga. App. at 37 (1) (a) (quoting *Barone*, 179 Ga. App. at 814 (1)). Simply because the *denial* of a motion for an extension is *not* an abuse of discretion, however, it does not necessarily follow that the *grant* of an extension *is* an abuse of discretion. See, e.g., *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) ("A proper application of the abuse-of-discretion review" recognizes that there is a "range of possible conclusions the trial judge may reach" and that this Court often will affirm a trial court ruling under an abuse-of-discretion standard "even though we would have gone the other way had it been our call" (footnote and punctuation omitted)); *McDonald v. Garden Svcs., Inc.*, 163 Ga. App. 851, 852-853 (295 SE2d 551) (1982) (reviewing for abuse of discretion the trial court's finding as to the

6

reasonableness of the appellant's delay in paying costs and holding that, absent such abuse, this Court will not substitute its judgment for the trial court's, even if individual members of this Court may have reached a different conclusion).

Moreover, this Court's observation regarding a potential circumvention of the default statute in *Barone* – repeated in *Mecca Construction* and quoted by the majority in this case – is dicta, as it was unnecessary to either prior decision. See *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 370 (3) (797 SE2d 238) (2017) ("[T]he full text of judicial decisions is not law. Only the holdings of judicial decisions are law." (citation omitted)); accord *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (declining to give force to dicta in a prior decision "because it was not necessary to resolve the issue before the Court[.]"); *Wright v. State*, 228 Ga. App. 779, 780 (1) (492 SE2d 680) (1997) (statements in prior decisions purporting to construe statutes were dicta because they were not necessary to the prior decisions). As a result, it does not control our analysis here and should not form the basis for a new judicially created bright-line rule.

For these reasons, viewing the statutory framework as a whole, I would hold that it was within the trial court's broad discretion to grant an extension of time to file an answer under OCGA § 9-11-6 (b) on the facts of this case. To the extent that – as

the majority asserts – the exercise of such discretion is an end run around the provisions of OCGA § 9-11-55 (b), it is an end run that was created by the legislature. I therefore respectfully dissent to Division 2 of the majority opinion.